GALPIN v. PAGE.

1. Where in suits brought in a State court to settle an alleged copartnership between the plaintiffs and a deceased partner, the Supreme Court of the State decided that there had been no sufficient service on an infant defendant who had succeeded to an undivided interest in the property of the deceased partner, and consequently that the lower court had had no authority to appoint a guardian *ad litem* for such infant, and therefore reversed a decree directing a sale of the property of the deceased, such adjudication is the law of the case, and is binding upon the Circuit Court of the United States in an action brought by a grantee of the heirs of the deceased against a purchaser at a sale under such decree.

2. A superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to have jurisdiction to give the judgments it renders until the contrary appears; and this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. The rule is different with respect to courts of special and limited authority: *their* jurisdiction must affirmatively appear by sufficient evidence or proper averment in the record, or their judgments will be deemed void on their face.

3. The presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts, concerning which the record is silent. When the record

states the evidence or makes an averment with reference to a jurisdictional fact, it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred.

4. The presumptions indulged in support of the judgments of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits, and over proceedings which are in accordance with the course of the common law.

5. The tribunals of 'one State have no jurisdiction over the persons of other States, unless found within their territorial limits.

6. When by legislation of a State constructive service of process by publication is substituted in place of personal service, and the court upon such constructive service is authorized to proceed against the person of an absent party, not a citizen of the State nor found within it, the statutory provisions must be strictly pursued.

7. Where special powers conferred upon a court of general jurisdiction are brought into action according to the course of the common law, that is, in the usual form of common-law and chancery proceedings, by regular process and personal service, where a personal judgment or decree is asked, or by seizure or attachment of the property where a judgment *in rem* is sought, the same presumption of jurisdiction will usually attend the judgments of the court as in cases falling within its general powers. But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record.

8. The law imputes to an attorney knowledge of defects in legal proceedings for the sale of property taken under his direction.

9. The title of an attorney purchasing property at a judicial sale decreed in proceedings in which he acted as an attorney, falls by the law of California, with the reversal of the decree directing the sale, independent of defects in the proceedings; and conveyances after such reversal pass no title as against a grantee of the original owner of the property.

ERROR to the Circuit Court for the District of California.

Philip Galpin brought an action against Lucy Page for the possession of certain real property situated in the city of San Francisco. The case was tried by the court by stipulation of the parties without the intervention of a jury. Both parties claimed title to the premises from the same source, Franklin C. Gray, deceased, who died in the city of New York, in July, 1853, intestate, possessed of a large property

in California, both real and personal. Of the real property the premises in controversy were a portion. The deceased left surviving him a widow, Matilda, of whom a posthumous child was born in December afterwards, named Franklina. By the statute of California the entire estate of the deceased vested in the widow and child in equal shares.

.The plaintiff asserted title to the demanded premises through conveyances authorized by the Probate Court of the City and County of San Francisco, which administered upon the estate of the deceased. The defendant claimed title under a purchaser who bought at a commissioner's sale had under a decree of the District Court of the State rendered in an action brought to settle the affairs of an alleged copartnership between the deceased and others. It was admitted that the plaintiff acquired the title unless it had previously passed to the purchaser at the commissioner's sale. It was, therefore, upon the validity of the decree in the District Court and the consequent sale and deed of the commissioner that the present case was to be determined.

The action in which that decree was rendered arose in this wise: In February, 1854, William H. Gray, a brother of the deceased, brought a suit in equity in the District Court of the State (which embraced at the time the city of San Francisco), against Joseph C. Palmer and Cornelius J. Eaton, who had been appointed administrators of the estate of the deceased, and against the widow, Matilda, and James Gray, the father of the deceased. In his bill the complainant alleged that a copartnership had existed between himself and the deceased, which embraced commercial business in which the latter was engaged, and the purchase and sale of real estate; that the copartnership business was carried on, and the titles of the real property purchased were taken in the individual name of the deceased, but that the complainant was interested in all its business and property to the extent of one-third. The object of the suit was to have the affairs of the alleged copartnership settled, and to obtain a decree awarding one-third of its property to the complainant.

The allegation of the bill that a dormant and universal copartnership had existed between the complainant and the deceased was without any just foundation in fact, for, as hereinafter mentioned, it was afterwards held by the Supreme Court of the State to be unsupported by the evidence in the case.

The bill omitted to make the child, Franklina, a party, and accordingly, in June following, a supplemental or amendatory bill was filed by the complainant, referring to the original bill, and stating the birth of the child, that she was entitled to share in the estate of the deceased, and that she was absent from the State, a resident with her mother in Brooklyn, in the State of New York, and praying that she might be made a party defendant, that a guardian *ad litem* might be appointed for her, and that the complainant might have the same relief prayed in the original bill.

Subsequently an order was made by the court directing service of the summons upon the new defendant by publication. It was preceded by a recital that it appeared to the satisfaction of the court that the defendant resided out of the State, and that she was a necessary party to the action. It was not stated in the order in what way the facts recited appeared. It seemed probable that the court might have acted upon the statements of the supplemental complaint. The statute of the State, which authorizes constructive service by publication, is as follows:

" When the person on whom the service is to be made resides out of the State, or has departed from the State, or cannot, after due diligence, be found within the State, or conceals himself to avoid the service of summons, and the fact shall appear by *affidavit*, to the satisfaction of the court or a judge thereof, or a county judge, and it shall *in like manner* appear that a cause of action exists against the defendant in respect to whom the service is to be made, or that he is a necessary or proper party to the action, such court or judge may grant an order that the service be made by the publication of the summons."*

* Civil Practice Act of California, section 30; Hittel's General Laws of California, page 724.

In December following, upon the petition of the plaintiff, a guardian *ad litem* was appointed for the child. The other defendants appeared by attorneys and answered.

In January, 1855, Eaton, who had been a clerk of the deceased, and who, as administrator, was made defendant in the above action of Gray, resigned his trust and commenced a suit in the District Court of the State against Palmer, the remaining administrator, and against the widow and child. In his bill he also alleged that a copartnership had existed between him and the deceased, that such copartnership embraced all the business and real estate transactions of the deceased, and that his interest in the partnership and its property was one-fourth.

In this action publication was made of the summons issued against the defendant, Franklina, but it nowhere appeared in the record that any application was ever made to the court or judge thereof for an order directing the publication, or that any such order was ever made. So far as appeared from the record it was the voluntary act of the complainant without judicial authority or sanction. The Supreme Court afterwards held that no sufficient service was ever made of the summons issued. In September following, after the publication thus made, upon application of the complainant, the same person was appointed guardian *ad litem* for the infant defendant in this action, who had previously been appointed such guardian *ad litem* in the other action. The other defendants appeared by attorney and answered.

On the 23d of October following, upon the stipulation of the guardian thus appointed and the attorneys of the other defendants, the two actions were consolidated into one. Four days subsequently a decree was entered in this consolidated action, and from a certificate of the judge appended to the decree, it would seem to have been entered without trial and by consent and agreement of the parties. By this decree it was adjudged that a copartnership had existed between Eaton and the deceased, which embraced all the property, real and personal, and all the business of each

of them, and that in this copartnership Eaton had an interest of one-fourth; that there had also existed at the same time a copartnership between Gray and the deceased, which also embraced all the property, real and personal, and all the business of each, and that in this copartnership Gray had an interest of one-third; that the latter copartnership was subject to the copartnership with Eaton, and that, therefore, Eaton should take one-fourth of the estate, and Gray one-third of the remaining three-fourths, and that the residue should be equally divided between the widow and child. By the decree a reference was also ordered to a commissioner to take and state an account of the business profits and property of the two copartnerships, with directions upon the confirmation of his report to sell all the property, real and personal, of both copartnerships, and upon the confirmation of the sales to execute proper conveyances to the purchasers.

The commissioner stated an account as required, his report was confirmed, and by a decree of the court, made in April, 1856, a sale of the entire property of the two alleged copartnerships was ordered. The sale was had under this decree in May following. At that sale the premises in controversy were bid off by Gwyn Page, one of the attorneys of the plaintiff, Gray, and to him the commissioner executed a deed. Page subsequently sold and conveyed an undivided half of the premises to J. B. Crockett, his law partner, also one of the attorneys of the plaintiff, Gray, and the latter in June, 1863, conveyed his interest to Lucy Page, the defendant in the case. The interest of Gwyn Page in the remaining half passed by devise to the defendant.

On appeal to the Supreme Court of the State the decree of the District Court was, at the October Term of 1857, reversed, on the ground that no sufficient service of summons was made upon the infant, Franklina, under the statute, in the case of Eaton against Palmer, and that until such service no guardian *ad litem* could be appointed for her; and on the further ground that the evidence presented had not established a copartnership between William H. Gray and the

deceased. The case was accordingly remanded to the District Court, and afterwards both suits were dismissed.

The Circuit Court gave judgment in the suit below for the defendant, and the plaintiff thereupon brought the case here on writ of error. In its opinion, which accompanied the record, and in which the Circuit Court went into an elaborate argument to show that the District Court of California had, when its decree was rendered, apparently, jurisdiction, the Circuit Court held that the record in the State court could not be attacked collaterally unless it affirmatively showed that the court did not have jurisdiction. Its language was as follows:

"The record in the consolidated action is here attacked collaterally, and not on appeal, or, in a direct proceeding of any kind to reverse, set aside, or vacate the decree. The rule is different in the two cases. When attacked collaterally it is not enough that the record does not affirmatively show jurisdiction, but, on the contrary, it must affirmatively show that the court did not have jurisdiction, or the decree will be valid until reversed on appeal, or vacated on some direct proceeding taken for that purpose."

*Mr. Galpin, plaintiff in error, in propriâ personâ:*

The court below erred in holding that the judgment of a court of general jurisdiction cannot be attacked collaterally, except for matters apparent on the record, and that in the absence of matters affirmatively disclosing a want of jurisdiction the judgment is conclusive; in other words, in holding that the record imports such absolute verity that it can never be contradicted or questioned collaterally.

One illustration will show that the doctrine is not sound, or at any rate is subject to exceptions. Suppose a judgment is rendered against a party by publication of summons, and property sold under it, could not the heirs of the party defend against an ejectment brought by the purchaser, by showing that the party had been dead years before the suit was commenced, and that his estate, including the property in question, had been administered upon and settled? Would

it be pretended in any court that the record imported such absolute verity that it must be taken as true that the party was at the time alive, even though courts in other States had pronounced him dead, and had distributed his effects accordingly? All rules of evidence are intended to secure justice, and to hold the record conclusive in such a case would make the general rule of presumption with respect to judgments of superior courts of general jurisdiction, which is a wise one when properly applied, an instrument of monstrous wrong and injustice.

Take another case: A probate court on evidence deemed sufficient adjudges a man dead, and administers his estate. Although an inferior court, when it once gets jurisdiction, its proceedings are entitled to the same presumptions in their favor as the proceedings of courts of general jurisdiction. Having acquired jurisdiction apparently—that is, the jurisdictional fact being declared established—property is sold by the decree of the court. Now, would it not be competent for a purchaser from the man adjudged to be dead to show, in a suit brought by the purchaser under the decree of the court, that the man was alive all the time, and to make bodily profert of him in court? or must the doctrine of the court below prevail, and the man be held to be dead notwithstanding his vocal disclaimer?

Such cases show the error of the ruling of the court below. The true doctrine is that the jurisdictional fact must always be open to inquiry; for if the court has in truth no jurisdiction, it cannot cut off inquiry into its authority.

In *Williamson* v. *Berry*,* the Supreme Court of the United States says:

"We concur that neither orders nor decrees in chancery can be reviewed *as a whole* in a collateral way. But it is an equally well-settled rule in jurisprudence, that the jurisdiction of any court exercising authority over a subject, may be inquired into in every other court, when the proceedings in the former are relied upon, and brought before the latter, by a party claiming

---

* 8 Howard, 540.

the benefit of such proceedings. The rule prevails whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of States."

In support of this doctrine numerous cases are cited.*

In *Starbuck* v. *Murray*,† Marcy, J., dissipates the doctrine contended for in the court below; and in that case there was an allegation that the party had appeared. There is nothing of that kind here. He says:

"But it is strenuously contended that if other matter may be pleaded by the defendant, he is estopped from asserting anything against the allegation contained in the record. It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It seems to me that this proposition assumes the very proposition to be established which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgments are void, and therefore the supposed record is not in truth a record. If the defendant had not proper notice of, and did not appear to the original action, all the State courts with one exception agree in opinion that the paper introduced as to him is no record; but if he cannot show even against the pretended record that fact, on the alleged ground of the uncontrollable verity of the record, he is deprived of his defence by a process of reasoning that is to my mind little less than sophistry. The plaintiff in effect declares to the defendant: The paper declared on is a record, because it says you appeared, and you appeared because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact."

In *Dozier* v. *Richardson*,‡ the Supreme Court of Georgia says:

"It is no doubt true, that a judgment rendered against a man,

---

* Glass et al. *v.* Sloop Betsey, 3 Dallas, 6; Rose *v.* Himely, 4 Cranch, 241; Elliott *v.* Peirsol, 1 Peters, 328–40; Wilcox *v.* Jackson, 13 Id. 499; Shriver's Lessee *v.* Lynn, 2 Howard, 59; Lessee of Hickey *v.* Stewart, 3 Id. 750.
† 5 Wendell, 158.                    ‡ 25 Georgia, 92.

by a court that has jurisdiction to render it, is conclusive against him if not obtained by fraud. But does a court have jurisdiction to render judgment against a man who has never had notice of the suit, and who does not appear to the suit? Most certainly not. Can it get this jurisdiction by falsely reciting, in some proceeding in the suit, that the man was notified of the suit, or that he appeared to it? Nobody will say so. But we have to say so in effect, if we say that such recitals are conclusive on the man. This must be manifest. It follows, then, that we cannot say so."

· The legal chicane exposed in these cases, from New York and Georgia, offends the sense of justice of every one; and every logical mind revolts from its wretched sophistry.

There is no presumption of law from the existence of a judgment that process was served, because no presumption can arise except in favor of a valid record; and there is no proof that the papers are a valid record, unless they contain proof of service. Otherwise a record possibly invalid proves service, and the service thus presumed proves the record.

That the record must show proof of service appears from · many cases.*

But if any presumption of service would ordinarily be raised from the existence of a judgment, no such presumption can be raised in favor of this record, because,

1. The record shows affirmatively that Franklina was *not within the jurisdiction* of the court prior to the entry of the judgment, and this fact would overthrow the presumption referred to, if any such existed.

2. The record proves affirmatively that a constructive service was attempted, which failed.

In the case at bar the court will observe also that the purchaser at the sale, under the decree of the District Court, was one of the attorneys of the plaintiff Gray, and that he·

---

* See Kinnier v. Kinnier, 45 New York, 541; Kerr v. Kerr, 41 Id. 275; Brown v. Nichols, 42 Id. 36, see dissenting opinion of Grover; Robson v. Eaton, 1 Term, 62; Shelton v. Tiffin, 6 Howard, 186; Thatcher v. Powell, 6 Wheaton, 127; Buchanan v. Rucker, 9 East, 192; 1 Campbell, 63; Bissel v. Briggs, 9 Massachusetts, 462, and other cases.

conveyed one undivided half interest to his law partner, also attorney of the plaintiff Gray. They took their interests with knowledge of all the defects in the proceedings. They do not stand in the position of strangers ignorant of all the proceedings. The defendant took from Page, one of the attorneys, by devise, and from the other attorney long after the reversal of the decree.

*Messrs. E. L. Goold, Carlisle, and McPherson, contra:*

I. *The decree of the District Court in the two consolidated cases of Gray v. Palmer et al. and Eaton v. Palmer, cannot be collaterally attacked. The tribunal being a superior court, clothed with jurisdiction of the subject-matter, its record imparts plenary proof of its jurisdiction over the person of the defendant, without explaining the steps by which that jurisdiction had been acquired.*

When a judgment has been rendered by a superior court, having jurisdiction of the subject-matter involved, it is not necessary that the record should disclose the proof of the mode by which the process was served upon the losing party. In this instance it is certain that the court did have jurisdiction of the subject-matter, for the case was one of the settlement of a partnership, and the partnership property was found within the jurisdictional limits of the court.

That the court had jurisdiction to determine such questions as were involved in these two cases, was decided by the Supreme Court of California, where they were considered on appeal.

In *Gray* v. *Palmer*,* the language of the court was:

"The primary object was to obtain the control of the partnership property, and the sale of so much of it as would be required to pay the partnership debts, and for a partition of the remainder of the real estate, if any. These complex objects could only be accomplished by proceedings in the District Court. The Probate Court had no judicial means to do this."

This language shows that the jurisdiction of the subject-matter of the controversy cannot be put in contest.

---

* 9 California, 637.

And now, as to that of the person.

On this head, many of the authorities are collected in Smith's Leading Cases.   Hare and Wallace's notes* say : ·

"Superior courts are presumed to act by right and not by wrong, and their acts and judgments are consequently conclusive in themselves, unless plainly beyond the jurisdiction of the tribunals whence they emanate."

In *Foot* v. *Stevens*,† it was held that where a court of general jurisdiction has rendered judgment, it will be presumed that it has jurisdiction over the person of the defendant. The court, after citing from several decisions, says :

"All these authorities are but an iteration, in another form, of the rule so strongly and clearly expressed in *Peacock* v. *Bell*,‡ in 19 Car. II. 'The rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so.' This, too, was said of a county court, which though inferior to the K. B., yet say the court, 'that does not prove it to be an inferior court in the sense that it ought to certify everything precisely,' and this too was on error. The record did not show jurisdiction, but the K. B. '*intended it*' until the contrary should be shown.

"Indeed, it may be asked where is the case which ever held a judgment record of a court of general jurisdiction void because it omitted to assert some formal step in the acquiring of jurisdiction?   The omission in *Peacock* v. *Bell* was essential.   The declaration fails to show a territorial power.   All the cases are against this objection, and would fill a page of quotation.   Shall it be said that the law will not presume until the record first asserts the fact in a line of circumstances which give jurisdiction?   I answer, such a construction of the rule again contradicts the leading case of *Peacock* v. *Bell*, and confounds all distinction between courts of general and limited jurisdiction.   Even as to the latter, its record asserting the fact becomes *primâ facie* evidence.   In such case there is no need of presumption; there is direct proof.   And does the rule mean to say no more in respect to a court of record?   It seems to me a solecism.   In

* Vol. 1, p. 816; note to Crepps *v.* Durden et al.
† 17 Wendell, 486.                    ‡ 1 Saunders, 74.

regard to limited courts, not proceeding according to the course of the common law, it will not presume; and therefore they must state by their record. While as to the superior court, though it omit a formal ingredient, it shall be intended in respect to the solemnity of the main proceedings. It is unreasonable and contrary to presumption, to suppose a judgment recorded by a court in all its important forms without the usual notice."

This principle was enforced in California at an early day.*

II. *Assuming that a record of a superior court, which contains some words reciting steps towards the jurisdiction, fails to recite them all, the law will intend that the remaining necessary steps were taken, and that in reference to them the court judicially passed upon evidence necessary to support the jurisdiction, unless it affirmatively appear that these steps were omitted.*

This is the doctrine of the Supreme Court of California.†

*Something* was done in the District Court of California towards bringing in Franklina by publication; and nothing of an affirmative character appears tending to show she was not served. The very act of naming a guardian *ad litem* involves a declaration by the judge that the infant whose rights are to be protected had already been served with process. The statute did not authorize the appointment of a guardian until service had been made. Such service must be presumed from the action of the court in selecting the guardian. How *guard* the infant's rights if they were not in question? And how could they be brought in question if no service had been made? That the written evidence of this service does not appear is a matter of no moment. It may have been lost or may have been mislaid. It is enough that the court was empowered to determine this *jurisdictional* fact, and did so determine it by the appointment. That determination can no more be assailed collaterally, than can any other decree in the cause.

This court said in *Erwin* v. *Lowry :* ‡

" We hold that whenever a judgment is given by a court

---

* Alderson *v.* Bell, 9 California, 321.

† Hahn *v.* Kelly, 34 Id. 391.                ‡ 7 Howard, 181.

having jurisdiction of the parties and of the subject-matter, the exercise of jurisdiction warrants the presumption in favor of the purchaser that the facts which were necessary to be proved to confer jurisdiction were proved."

And in *Voorhees* v. *Bank of the United States:**

"There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears; and this rule applies as well to every judgment or decree, rendered in the various stages of their proceedings from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged."

Under this view, complete protection is afforded a purchaser at a judicial sale.

In the late case of *McCauly* v. *Fulton*,† the Supreme Court of California said:

"It has been repeatedly held by this court that upon collateral attack recitals in the judgment of service on the defendant are conclusive of the position of jurisdiction of the person, when the judgment is rendered by a court of superior jurisdiction."

*Reply:* None of the authorities cited sustain the theory that a judgment may be presumed valid from the fact that it exists. The authorities to the effect that recitals of the existence of jurisdictional facts are binding, do not apply, because *there are no such recitals of service in this record.* Furthermore, those authorities may be divided into three general classes:

1. Attachment cases, where the jurisdiction is acquired by the issuing of the writ of attachment and seizure of the *rem;* jurisdiction being thus acquired, no notice to the parties is necessary other than that given by the seizure.

This principle is illustrated in *Cooper.* v. *Reynolds.*‡

---

* 10 Peters, 449.          † Decided at the October Term, 1872.

‡ 10 Wallace, 318; and see Miller *v.* United States, 11 Id. 326.

2. Probate proceedings, which have always been held to be proceedings *in rem*, of which all the world is bound to take notice, without either personal or constructive service of summons.

3. Cases where, *after* jurisdiction *over the person* had been acquired, the jurisdictional question passed on was involved in the issues, or was one which the court had power to pass on; and having done so, and exercised the power, the matter determined had passed out of the region of jurisdiction and became *res adjudicata* so far as other courts were concerned, especially on a collateral attack.

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court as follows:

The Supreme Court of the State in its opinion, to which we are referred in the findings, speaks of its decision as though there were two separate decrees before it; but this is an evident inadvertence, as there was but one decree, and that was reversed for the reasons assigned as applying to proceedings in the separate suits before their consolidation. After the reversal of the decree it is possible that the suits proceeded independently of each other as before their consolidation, until the dismissal disposed of them entirely.

The defendant relies upon the validity of the decree of the District Court, notwithstanding its subsequent reversal, to uphold the commissioner's sale and deed. Her position is this: that the District Court of the State was a court of general jurisdiction; that being such it is presumed to have had jurisdiction both of the subject-matter and persons which authorized the rendition of the decree in question; that such presumption is conclusive, and the validity of the decree cannot be collaterally attacked by any matter outside of the record, and that, therefore, the sale made under the decree before it was reversed is not affected by the reversal.

The position of the defendant was sustained by the Circuit Court. "The record in the consolidated action," says that court, "is here attacked collaterally, and not on appeal, or in a direct proceeding of any kind to reverse, set aside,

or vacate the decree.    The rule is different in the two cases.
When attacked collaterally it is not enough that the record
does not affirmatively show jurisdiction, but, on. the con-
trary, it must affirmatively show that the court did not have
jurisdiction, or the decree will be valid until reversed on
appeal, or vacated on some direct proceeding taken for that
purpose."

If the rule as thus stated were universally true it would
not support the decree in the case at bar, for the record in
the consolidated action does affirmatively show that the Dis-
trict Court never acquired jurisdiction over the person of
Franklina C. Gray in one of the actions; and, therefore, had
no more authority to appoint a guardian *ad litem* for her in
that action than it had to appoint attorneys for the other
defendants.    That record embraces the judgment of the ap-
pellate court as well as the decree of the District Court; and
it contains an express adjudication of the appellate court to
that effect.    The record of itself establishes, therefore, the
invalidity of the decree.    The adjudication of the appellate
court constitutes the law of that case upon the points, ad-
judged, and is binding upon the Circuit Court and every
other court when brought before it for consideration.    The
Circuit Court possesses no revisory power over the decisions
of the Supreme Court of the State, and any argument to
show that that court mistook the law and misjudged the
jurisdictional fact would have been out of place.    There
were no facts before the Circuit Court which were not be-
fore the Supreme Court of the State when its judgment
was pronounced.

But the rule of law as stated by the Circuit Court is not
universally true.    It is subject to many exceptions and quali-
fications, and has no application to the case at bar.

It is undoubtedly true that a superior court of general
jurisdiction, proceeding within the general scope of its
powers, is presumed to act rightly.    All intendments of law
in such cases are in favor of its acts.    It is presumed to
have jurisdiction to give the judgments it renders until the
contrary appears.    And this presumption embraces jurisdic-

tion not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. The former will generally appear from the character of the judgment, and will be determined by the law creating the court or prescribing its general powers. The latter should regularly appear by evidence in the record of service of process upon the defendant or his appearance in the action. But when the former exists the latter will be presumed. This is familiar law, and is asserted by all the adjudged cases. The rule is different with respect to courts of special and limited authority; as to them there is no presumption of law in favor of their jurisdiction; that must affirmatively appear by sufficient evidence or proper averment in the record, or their judgments will be deemed void on their face.

But the presumptions, which the law implies in support of the judgments of superior courts of general jurisdiction, only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred. If, for example, it appears from the return of the officer or the proof of service contained in the record, that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place; or if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also. Were not this so it would never be possible to attack collaterally the judgment of a superior court, although a want of jurisdiction might be apparent upon its face; the answer to the attack would always be

that, notwithstanding the evidence or the averment, the necessary facts to support the judgment are presumed.

The presumptions indulged in support of the judgments of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits, persons who can be reached by their process, and also over proceedings which are in accordance with the course of the common law.

The tribunals of one State have no jurisdiction over the persons of other States unless found within their territorial limits; they cannot extend their process into other States, and any attempt of the kind would be treated in every other forum as an act of usurpation without any binding efficacy. " The authority of every judicial tribunal, and the obligation to obey it," says Burge, in his Commentaries, " are circumscribed by the limits of the territory in which it is established."* " No sovereignty," says Story, in his Conflict of Laws, " can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals."† And in *Picquet* v. *Swan*,‡ the same learned justice says: " The courts of a State, however general may be their jurisdiction, are necessarily confined to the territorial limits of the State. Their process cannot be executed beyond those limits; and any attempt to act upon persons or things beyond them would be deemed a usurpation of foreign sovereignty, not justified or acknowledged by the law of nations. Even the Court of King's Bench, in England, though a court of general jurisdiction, never imagined that it could serve process in Scotland, Ireland, or the colonies, to compel an appearance, or justify a judgment against persons residing therein at the time of the commencement of the suit. This results from the general principle that a court created within

---

* Commentaries on Colonial and Foreign Law, p. 1044.
† Section 539.                                    ‡ 5 Mason, 40.

and for a particular territory is bounded in the exercise of its powers by the limits of such territory. It matters not whether it be a kingdom, a state, a county, or a city, or other local district. If it be the former, it is necessarily bounded and limited by the sovereignty of the government itself, which cannot be extra-territorial; if the latter, then the judicial interpretation is that the sovereign has-chosen to assign this special limit, short of his general authority."

In *Steel* v. *Smith*, Mr. Chief Justice Gibson, of the Supreme Court of Pennsylvania, after referring to the citations we have made from the treatises of Burge and Story, says: " Such is the familiar, reasonable, and just principle of the law of nations; and it is scarcely supposable that the framers of the Constitution designed to abrogate it between States which were to remain as independent of each other, for all but national purposes, as they were before the Revolution. Certainly it was not intended to legitimate an assumption of extra-territorial jurisdiction which would confound all distinctive principles of separate sovereignty."*

Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal judgment or decree is rendered, was, at the time of the alleged service, without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree. This is so obvious a principle, and its observance is so essential to the protection of parties without the territorial jurisdiction of a court, that we should not have felt disposed to dwell upon it at any length, had it not been impugned and denied by the Circuit Court. It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and

---

* 7 Watts & Sergeant, 451.

has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered.

When, therefore, by legislation of a State constructive service of process by publication is substituted in place of personal citation, and the court upon such service is authorized to proceed against the person of an absent party, not a citizen of the State nor found within it, every principle of justice exacts a strict and literal compliance with the statutory provisions. And such has been the ruling, we believe, of the courts of every State in the Union. It has been so held by the Supreme Court of California in repeated instances. In *Jordan* v. *Giblin*,* decided in 1859, service of publication was attempted, and the court said that it had already held, " in proceedings of this character, where service is attempted in modes different from the course of the common law, that the statute must be strictly pursued to give jurisdiction. A contrary course would encourage fraud and lead to oppression." In *Ricketson* v. *Richardson*,† decided in 1864, the court, referring to the sections of the statute authorizing service by publication, said: " These sections are in derogation of the common law, and must be strictly pursued in order to give the court jurisdiction over the person of the defendant. A failure to comply with the rule there prescribed in any particular is fatal where it is not cured by an appearance." In *McMinn* v. *Whelan*,‡ decided in 1866, the plaintiff in ejectment traced his title from one Maume. The defendants endeavored to show that the title had passed to one of them under a previous judgment against Maume. This judgment was recovered against Maume and others, who were non-residents of the State, upon service of summons by publication. It appeared from the record that a supplemental complaint had been filed in the action, and that the summons published was issued upon

---

* 12 California, 100.          † 26 Id. 149.          ‡ 27 Id. 300.

the original complaint, and not after that had been super-
seded by the supplemental complaint. It was objected that
the publication thus made was insufficient to give the court
jurisdiction of the person of the absent defendants; the ob-
jection was answered by the position that the judgment
could not be questioned collaterally for the reason that the
jurisdiction of a court of general or superior jurisdiction
would be presumed in the absence of evidence on the face
of the record to the contrary. But the court held the objec-
tion well taken, and after referring to the case of *Peacock* v.
*Bell*, in Saunders, said that that case "involved the question
of jurisdiction as to the subject-matter of the action and not
as to the person of the defendant, and it may be doubted if
a case can be found which sanctions any intendment of juris-
diction over the person of the defendant when the same is
to be acquired by a special statutory mode without personal
service of process. If jurisdiction of the person of the de-
fendant is to be acquired by publication of the summons in
lieu of personal service, the mode prescribed must be strictly
pursued."

But it is said that the court exercises the same functions
and the same power whether the service be made upon the
defendant personally or by publication, and that, therefore,
the same presumption of jurisdiction should attend the judg-
ment of the court in the one case as in the other. This rea-
soning would abolish the distinction in the presumptions of
law when applied to the proceedings of a court of general
jurisdiction, acting within the scope of its general powers,
and when applied to its proceedings had under special statu-
tory authority. And, indeed, it is contended that there is
no substantial ground for any distinction in such cases.
The distinction, nevertheless, has long been made by courts
of the highest character, both in this country and in Eng-
land, and we had supposed that its existence was not open
to discussion. "However high the authority to whom a
special statutory power is delegated," says Mr. Justice Cole-
ridge, of the Queen's Bench, "we must take care that in the
exercise of it the facts giving jurisdiction plainly appear, and

that the terms of the statute are complied with. This rule applies equally to an order of the Lord Chancellor as to any order of Petty Sessions."*

" A court of general jurisdiction," says the Supreme Court of New Hampshire, " may have special and summary powers, wholly derived from statutes, not exercised according to the course of the common law, and which do not belong to it as a court of general jurisdiction. In such cases, its decisions must be regarded and treated like those of courts of limited and special jurisdiction. The jurisdiction in such cases, both as to the subject-matter of the judgment, and as to the persons to be affected by it, must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it."†

The qualification here made that the special powers conferred are not exercised according to the course of the common law is important. When the special powers conferred are brought into action according to the course of that law, that is, in the usual form of common-law and chancery proceedings, by regular process and personal service, where a personal judgment or decree is asked, or by seizure or attachment of the property where a judgment *in rem* is sought, the same presumption of jurisdiction will usually attend the judgments of the court as in cases falling within its general powers. Such is the purport of the language and decision of this court in *Harvey* v. *Tyler*.‡ But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record.

---

* Christie *v.* Unwin, 3 Perry & Davison, 208.
† Morse *v.* Presby, 5 Foster, 302.        ‡ 2 Wallace, 332.

The extent of the special jurisdiction and the conditions of its exercise over subjects or persons necessarily depend upon the terms in which the jurisdiction is granted, and not upon the rank of the court upon which it is conferred. Such jurisdiction is not, therefore, the less to be strictly pursued because the same court may possess over other subjects or other persons a more extended and general jurisdiction. Upon this subject the commentators on Smith's Leading Cases, after referring to numerous decisions holding that in such cases the record must show a compliance with the provisions of the statutes conferring the special jurisdiction, very justly observe that, "the inconveniences which may occasionally result from this course of decision are more than compensated by the lesson which it teaches, that from whatever source power may come it will fail of effect when unaccompanied by right."*

In the supplemental complaint filed in the action of *Gray* v. *Eaton* and others, and in the original complaint of *Eaton* v. *Palmer*, the absence of Franklina from the State and her residence in another State are alleged. The record in the two actions, and of course in the consolidated action, shows that she was thus beyond the reach of the process of the court. All presumption of jurisdiction over her person by the District Court, which otherwise might have been indulged, is thus repelled, and it remains for the defendant to show that by the means provided by statute such jurisdiction was obtained. The statute provides, in case of absent and non-resident defendants, for constructive service of process by publication. It requires an order of the court or judge before such publication can be made; it designates the facts which must exist to authorize the order, the manner in which such facts must be made to appear, the period for which publication must be had, and the mode in which the publication must be established. These provisions, as already stated, must be strictly pursued, for the statute is in derogation of the common law. And the order, which is

* Vol. 1, p. 1012.

the sole authority for the publication, and which by statute must prescribe the period and designate the paper in which the publication is to be made, should appear in the record with proof of compliance with its directions, unless its absence is supplied by proper averment. If there is any different course of decision in the State it could hardly be expected that it would be followed by a Federal court, so as to cut off the right of a citizen of another State from showing that the provisions of law, by which judgment has been obtained against him, have never been pursued.

The provisions mentioned were not strictly pursued with respect to the infant defendant. There were various omissions and irregularities in the proceedings taken which prevented the jurisdiction over her from ever attaching. It is unnecessary to specify them, as the effect of some of them has been the subject of judicial determination by the Supreme Court of the State. That court has adjudged that no sufficient service was ever made upon her, and that until such service no guardian *ad litem* could be appointed for her; and that adjudication is conclusive. It follows that the decree against her, and all proceedings founded upon such decree, so far as her rights are concerned, necessarily fall to the ground. Judgment without jurisdiction is unavailing for any purpose.

The decree being thus reversed, the title acquired by Page, the purchaser at the commissioner's sale, falls with it. He was one of the attorneys of the plaintiff Gray, and the law imputes to him knowledge of the defects in the proceedings, which were taken under his direction and that of his copartners, to obtain service upon the infant. The conveyance by him of an undivided half to his law partner, also one of the plaintiff's attorneys, was made after the decree of the District Court had been reversed for want of jurisdiction over the infant. The partner also took his interest with knowledge of this defect. The protection which the law gives to a purchaser at judicial sales is not extended in such cases to the attorney of the party, who is presumed to be cognizant of all the proceedings.

In many of the States it is the law that a purchaser at a judicial sale loses his title upon a reversal of the judgment or decree under which the sale was made, where such pur-chaser is a party to the judgment or decree.  In *Reynolds* v. *Harris* it was held by the Supreme Court of California that, where a plaintiff bought property under a judgment, he must restore it to the defendant on a reversal of the judg-ment; the court observing, after citing several cases, that the current of authority, broken only by a case or two, went "directly to the point that a party obtaining through the judgment before reversal any advantage or benefit, must restore what he got to the other party, after the reversal."* The writer of this opinion endeavored to combat this doc-trine in a case in the Circuit Court of the United States, where a purchase had been made under a decree in that court for the enforcement of a mechanic's lien.  In that case the complainant was mentioned in the decree as a possible bidder, and provision was made for crediting his bid on the amount adjudged due to him.  On a reversal of the decree the court sustained the sale, and endeavored in its opinion to show that on principle the same protection should extend to purchasers under judgments and decrees when parties as when strangers.  The law, however, of the State does not appear, so far as we are enabled to discover from the de-cisions of its Supreme Court, to have been changed since the decision in *Reynolds* v. *Harris*.  And according to that law the purchasers being the attorneys of the parties, and stand-ing in the same position as the parties, could not maintain their title independent of any defects of jurisdiction in the proceedings.

The same doctrine prevails in Missouri.  "The restitu-tion," says the Supreme Court of that State, "to which the party is entitled upon the reversal of an erroneous judgment, is of everything which is still in the possession of his adver-sary.  Where a man recovers land in a real action, and takes possession or acquires title to land or goods by sale under

---

* 14 California, 680.

execution, and the judgment is afterwards reversed, so far as he is concerned his title is at an end, and the land or goods must be restored in specie; not the value of them, but the things themselves.   There is an exception where the sale is to a stranger *bonâ fide*, or where a third person has *bonâ fide* acquired some collateral right before the reversal."*   The same doctrine is asserted in *McJilton* v. *Love*, by the Supreme Court of Illinois,† and is there stated to be well established by authority, and numerous cases in support of the position are cited.   In New York the doctrine would seem to be settled in the same way.‡   As this case must go back for a new trial, this position can be more fully considered than it appears to have been by the court below.

The defendant in this case acquired her interest, one-half, by devise from the purchaser, Page; and the other half by conveyance from one of the attorneys years after the reversal of the decree.

It follows that the judgment must be REVERSED, AND THE CAUSE

REMANDED FOR A NEW TRIAL.

DAVIS, J., did not sit in the case; and took no part in its decision.

---

* 41 Missouri, 416.   † 13 Illinois, 486.
‡ *Jackson* v. *Cadwell*, 1 Cowen, 644.