COHEN v. PORTLAND LODGE NO. 142, B. P. O. E. et al.

(Circuit Court of Appeals, Ninth Circuit.    March 11, 1907.)

No. 1,392.

1. JUDGMENT—COLLATERAL ATTACK.

An attempt by an independent proceeding to impeach a foreclosure decree rendered in another court is a collateral attack on such decree.

2. SAME—JURISDICTIONAL FACTS—IMPERFECTIONS OF STATEMENT.

Where a foreclosure decree was based on an order for the publication of summons as against certain nonresident defendants, the latter on a collateral attack on such foreclosure decree could not rely on mere imperfections or uncertainty of statement of jurisdictional facts, in the affidavit for the order for publication.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 928.]

3. PROCESS—PUBLICATION—JURISDICTION—PRESUMPTIONS.

Where jurisdiction of a proceeding in rem is sought to be obtained by service by publication, jurisdiction will not be assumed and exercised on the general ground that the subject-matter of the suit is within the power of the court, but can be sustained only on a showing that the statutory provisions for acquiring jurisdiction were followed with exactness.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, § 129.]

4. JUDGMENT—COLLATERAL ATTACK—PROCESS—AFFIDAVIT FOR PUBLICATION.

On collateral attack, on a judgment rendered on service by publication, the affidavit for the order of publication will be understood to speak the truth, and it will not be presumed that there was other evidence respecting the fact, or that it was otherwise than as averred.

5. SAME—EXTRINSIC EVIDENCE.

Where a foreclosure decree was based on service by publication authorized by an order granted on an affidavit, the affidavit is the only record that can be considered on a collateral attack on such decree for the purpose of ascertaining whether the facts authorized the order of publication.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 940.]

6. PROCESS—AFFIDAVIT FOR PUBLICATION—DILIGENCE.

Where the affidavit for publication of a summons as to certain nonresident defendants alleged that affiant had inquired of one of the executors of the will of the decedent through whom the property in question passed to such defendants as to their whereabouts, and was told that they were then in a particular orphan asylum in San Francisco under the charge of the executor giving the information, the affidavit sufficiently showed diligence on the part of the affiant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, §§ 102, 118.]

7. SAME—NONRESIDENTS.

An affidavit for publication of a summons as against a nonresident minor declared that a summons had been delivered to the sheriff of the county for service and had been returned "Not Found," after diligent inquiry, etc.    The affidavit then recited that inquiry from the executor of the estate from which the defendant's interest in the property in controversy was acquired, had disclosed that the defendant, who was a minor, was in charge of the executor and residing in a private orphan asylum in California, and that "therefore" a summons could not be handed to the defendant within the state.    Held, that such allegations without a copy of the return of the sheriff on the summons sought to be served constituted prima facie evidence of the defendant's absence from the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, § 118.]

8. SAME—NONRESIDENTS.

The affidavit also sufficiently showed that defendant was prima facie a nonresident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Process, § 118.]

9. INFANTS—PROCESS—SERVICE ON MINORS—PUBLICATION.

B. & C. Comp. Or. § 55, provides for the service of summons on a minor under 14 years of age, by delivering a copy to such minor personally, and also to his father, mother, or guardian, or if there be none within the state, then to any person having the care or control of the minor, or with whom he resides or in whose service he is employed. Held, that such section did not apply to service on nonresident minors without the state, which could be had by publication as authorized by section 56.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Infants, §§ 261. 265.]

10. SAME—MAILING COPY.

B. & C. Comp. Or. § 57, directs that a copy of the summons and complaint be mailed to the nonresident defendant, when his place of residence is known. Held, that though such section applied both to nonresident adults and minors, it did not require the mailing of a copy of the summons and complaint to the person with whom a nonresident minor defendant resided.

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 144 Fed. 266.

This is a bill in equity brought by M. Cohen by his next friend Henry Mauser, to redeem lots 5 and 6 in block 83 in the city of Portland, from a mortgage executed by Nathan Cohen and wife, father and mother of M. Cohen, on March 22, 1888, in favor of Joseph Hume. The original mortgage was to secure the payment of the sum of $4,000 which Nathan Cohen borrowed from Hume. Nathan Cohen died in September, 1891, leaving a widow and children. By the terms of the father's will the children were vested with an equitable title to an undivided interest in the above-described property. The provisions of the will designated trustees of the estate for the use and benefit of the children. By indorsement and transfer the mortgage passed into the hands of Henry J. Biddle, who brought suit in the state court for its foreclosure March 20, 1897. This plaintiff, M. Cohen, was made a party defendant in the foreclosure proceedings. At the time he was a minor under the age of 14 years, and service of summons by publication was attempted to be made upon him. Subsequently a guardian ad litem was appointed for defendant minor; default was taken against him, and on February 9, 1898, a decree was entered in the Circuit Court of the state of Oregon for Multnomah county, foreclosing the mortgage and directing the sale of the property. The property was sold pursuant to the foreclosure proceedings, and was bid in by one P. H. Blyth for $10,000. Thereafter, through conveyances it passed to the defendants Howes, Upson, and McDevitt, trustees for the defendant Portland Lodge No. 142, Benevolent Protective Order of Elks. The defendant Portland Trust Company of Oregon advanced money on a mortgage executed by the defendant Portland lodge and is therefore made a party defendant.

Appellant by answer relied upon the ground that the service had by publication against the minor was void and of no effect, and that he has never been divested of his undivided interest in the property. Testimony was taken which went to prove that at the time the foreclosure suit was brought in the state court appellant here (defendant in the foreclosure proceeding) was an inmate of the Pacific Hebrew Orphan Asylum in San Francisco. The boy was in the immediate custody of Henry Mauser in the asylum. There was some testimony taken as to the value of the property at the time of the mortgage foreclosure and sale. There was also testimony to show that no papers were ever received by Mr. Mauser as and for service upon the minor complainant, and this is one of the grounds upon which appellants attack the sufficiency

of the service in the foreclosure proceeding. There was also evidence, tending to show that the minor complainant did not know about the service of the summons upon which the defendants here now rely until December, 1904. At that time appellant received a communication from the Lodge of Elks at Portland transmitting a quitclaim deed, and offering him $250 for it. He then sought advice as to his rights and in March, 1905, instituted this suit. The Circuit Court held that upon the record of the action in foreclosure the service of the summons in the case of Biddle against the defendant therein, complainant herein, was valid, and that it was not necessary that a copy of the complaint and summons should have been mailed to Mr. Henry Mauser at San Francisco, the person with whom this complainant resided at the time of the foreclosure proceedings. The complainant's bill was dismissed, and from a decree of dismissal appeal was thereafter taken to this court.

Zera Snow and Wallace McCamant, for appellant.
Bernstein & Cohen and H. H. Northup, for appellees.

Before ROSS, Circuit Judge, and De HAVEN, and HUNT, District Judges.

HUNT, District Judge (after stating the facts). It is unnecessary to discuss at length the analytical distinctions sometimes drawn between what are called collateral and direct attacks upon judgments; for here the attempt to impeach the judgment rendered in the state court, being in an action other than that wherein the judgment was rendered, we can safely regard the proceeding as embraced within those attacks denominated collateral rather than direct. It is perfectly clear to us that the appellant cannot rely upon mere imperfection of statements, or even uncertainty of statement of jurisdictional facts in the affidavit for the order for the publication of summons obtained in the foreclosure suit. Nor can he admit that there was some evidence of the essential facts contained in the affidavit, yet contend that such evidence was not sufficient for the court to have acted upon. He must stand or fall upon the ground, not of irregularity or error, but that there was no evidence in the affidavit for an order of publication filed in the state court upon the points of residence and absence from the state of Oregon.

It is a fundamental principle that where jurisdiction is acquired against the person by the service of process, or by a voluntary appearance, a court of general jurisdiction will determine the matter in controversy between the parties. There is, however, a well-known exception to the application of this principle; that is, in cases where there is a special jurisdiction authorized by statute, though exercised by a court of general jurisdiction. And among the exceptional instances are methods of acquiring jurisdiction over persons not within a state. As to such methods the way as precisely pointed out by the statute must be followed. There can be no procedure except in cases authorized by the statute, and the statutory provisions for acquiring jurisdiction must be followed with exactness. In Boswell's Lessee v. Otis, 9 How. 336, 13 L. Ed. 164, the Supreme Court, through Justice McLean, said:

"When the record of a judgment is brought before the court, collaterally or otherwise, it is always proper to inquire whether the court rendering the judgment had jurisdiction. * * * It may be difficult in some cases to draw the line of jurisdiction so as to determine whether the proceedings of a court are void or only erroneous. And in such cases every intendment should be favorable to a purchaser at a judicial sale. But the rights of all parties

must be regarded. No principle is more vital to the administration of justice than that no man shall be condemned in his person or property without notice, and an opportunity to make his defense. And every departure from this fundamental rule, by a proceeding in rem, in which a publication of notice is substituted for a service on the party, should be subjected to a strict legal scrutiny. Jurisdiction is not to be assumed and exercised in such cases upon the general ground that the subject-matter of the suit is within the power of the court. This would dispense with the forms of the law prescribed by the Legislature for the security of absent parties. The inquiry should be, have the requisites of the statute been complied with, so as to subject the property in controversy to the judgment of the court, and is such judgment limited to the property named in the bill. If this cannot be answered in the affirmative, the proceedings of the court beyond their jurisdiction are void."

Presumptions in favor of jurisdiction are lacking in a case where service of summons by publication is had. In discussing presumptions where special powers are conferred upon courts—and the power to order service of process upon a nonresident outside of the limits of the state is a proceeding had under special statutory authority—the Supreme Court in Galpin v. Page, 85 U. S. 350, 371, 21 L. Ed. 959, said:

"But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record."

Where the affidavit required by the statute for an order of publication of a summons states the evidence or makes an allegation concerning a jurisdictional fact, it will be understood to speak the truth on that point and it will not be presumed that there was other evidence respecting the fact or that the fact was otherwise than as averred. Galpin v. Page, supra. In the present case therefore, the record to which we must resort, and the only record to which we can resort, is the affidavit upon which the order of publication is expressly based. It is therein that the facts essential to the exercise of special jurisdiction must appear. We are limited to this one record because the order of publication in the foreclosure suit is based wholly upon the affidavit of one of counsel for the plaintiff, the court in the order of publication stating as follows:

"Upon reading and filing the affidavit of Warren E. Thomas, one of the attorneys for plaintiff in the above-entitled suit, and it satisfactorily appearing therefrom to me," etc.

We proceed, therefore, to ascertain what the affidavit must contain, and then whether upon its face it shows a want of jurisdiction in the court that rendered the decree. The statute requires that both nonresidence and absence must exist and both must appear to the satisfaction of the court to exist before the court can grant an order that service shall be made by publication; and there must always be a showing by affidavit that due diligence has been used to find the defendant within the state. So we have three matters material to the ultimate point involved in our inquiry, each of which must have been made to appear to the state court before the order could have been proper. First, it must have appeared that diligence had been used to find the defendant

in the state; second, it must have appeared that defendant could not be found within the state after a diligent search; and, third, it must have appeared that defendant was not a resident of the state when the order was applied for. The purpose of the statute, requiring a diligent search as a prerequisite to the consideration of the matter of absence and nonresidence, is obviously to allow no departure from the ordinary methods of service upon the person by delivery of process as prescribed, unless absence and nonresidence make a substitute service permissible.

Now, let us look at the affidavit under consideration and examine its allegations, and see whether there is in it some evidence showing or tending to show that the minor defendant named in the affidavit, complainant herein, was not within the state of Oregon and did not reside within that state when the application for an order of publication was made. It reads as follows:

"* * * That said summons issued as aforesaid was delivered to the sheriff of Multnomah county, state of Oregon, with directions to said sheriff to serve the same upon the defendants, and each of them, and said sheriff has returned said summons to the clerk of this court with his return indorsed thereon, to the effect that said defendants Aaron M. Cohen, Moses M. Cohen, and Emanuel Meyer, cannot after due diligence be found within this state, although diligent search and inquiry for the purpose of finding them have been made. That this affiant has made diligent search and inquiry for the purpose of finding the last-named defendants, and each of them, as follows: I have inquired of the defendant M. C. Lyon, who is one of the executors of the last will and testament of Nathan Cohen, deceased, the father of said defendants, Aaron M. Cohen and Moses M. Cohen, and he informs me that neither of said minors is at this time within the state of Oregon, and that both of them are at the present time residents of, and now are at, the Pacific Hebrew Orphan Asylum & Home Society, at No. 600 Devisadero, corner Hayes street, in the city of San Francisco, state of California, and that that is their present post office address; that the said M. C. Lyon informs me that he knows personally that said minors are at said place, as he placed them at said institution, which said institution is a school; and that he is in constant communication with the authorities there, and that he has charge of their schooling and education. * * * That this affiant therefore says that personal service of said summons cannot be made on said defendants Aaron M. Cohen, Moses M. Cohen, and Emanuel Meyer, and prays for an order that service of the same may be made by publication thereof, as is by law provided."

Undoubtedly the probative facts upon which the ultimate facts rest must be sufficiently set forth in the affidavit to enable the court or judge to base a conclusion upon that the ultimate facts alleged are proven. In this respect the affidavit, while not really a pleading, may be tested by familiar rules which are applied to pleadings. As we have seen, being the foundation upon which jurisdiction rests, it must be laid upon a showing strong enough to sustain the power of the court to make an order. Resuming, now, the examination of the affidavit, we can easily dismiss any suggestion of imperfection by way of a lack of showing of due diligence by affiant. Inquiry of one of the executors of the will of the deceased Cohen, as to the whereabouts of the minor child, and having been told by such person that he was then residing at a particular orphan asylum in San Francisco and that his schooling was under the charge of the executor giving such information, certainly constituted an ample showing of diligence to ascertain the whereabouts of the minor.

Indeed, we do not understand that appellant urges a lack of a showing of due diligence.

Let us move on then to the point that there is no evidence of absence from the state and of nonresidence. The affiant declares that a summons had been delivered to the sheriff to serve the same upon the defendant named therein, and that it had been returned indorsed, in effect, "not found," although diligent search and inquiry for the purpose of finding him had been made. This is affiant's statement of the substance of the record in the case; yet it is fairly entitled to be accepted as an accurate résumé of what the record shows, made by an attorney of the court. This statement is evidence, though subject to the criticism that it is not of as good quality or grade of evidence as the record itself would have been had copy thereof been incorporated as part of the affidavit. But it was not necessarily inadmissible solely on that account, and the court was justified in attaching to the declaration of the affiant such importance and weight as it would have given to the record return by the sheriff. When weighed by the court the official statement by the sheriff touching the things he was required by law to do by way of serving the defendant in the mortgage foreclosure suit with process, was at least prima facie evidence of the defendant's absence from that county in the state wherein the sheriff exercised official authority. Furthermore, the absence of the defendant from the state was made to appear by the information given to affiant by the executor. This information in itself was definite and positive; and, if it was a proper evidential basis upon which the affiant could legally and in good faith conclude that defendant was not in the state, then his sworn conclusion, that because of such information personal service was not to be had, was proper.

Appellant urges, however, that the averments of absence by affiant are mere opinions and hearsay, in that they are but evidence of the immaterial fact of what the executor told the affiant, and that there is no evidence of the truth of the executor's statement. But suppose a person cannot be found within a state after the exercise of ordinary and honest diligence to learn of his whereabouts. Suppose he is not at his usual abiding place, nor is he seen upon the streets of the city where he lives, nor is he doing business where he is ordinarily accustomed to. What is so natural in looking for him as to inquire of his relatives concerning his whereabouts; or if he be a minor to inquire of the one who has care of his person, his education or his property, or both? And if one makes such diligent search to find, and swears positively to its having been made, is he not in a position to accept and rely upon the information he has obtained by adopting a conclusion, necessarily a belief, that the person looked for is in fact absent from the state? We think he is, and that when he gives the source of his information, and then declares that because of the information a summons, or paper cannot be handed to the person sought within the state, he adopts the information, and, by adopting it, makes an averment of his own that the person is absent from the state. Or it may be put in another way: When the allegation of the affidavit positively shows due diligence to find, and states specific information given as to the absence of the person sought, then the affiant who states the information and follows the statement of it by the declaration that "therefore, personal service can-

not be made," makes his conclusion his own belief, properly resting it upon circumstances which he may reasonably use in support of the deduction positively made, which deduction is in effect nothing more nor less than that the defendant is absent from the state.    It is true that the statement that "therefore * * * personal service * * * cannot be made," is a conclusion, and that an affidavit couched only in the words of the statute is not sufficient; but if there is a showing of facts constituting due diligence, positively made, as in this case, and if there is a positive statement of information received from others in a position to know of the presence or absence of the defendant, as there is here, the information received from such others is competent to show absence, and if adopted by the affiant, as it is here by using the words "therefore" etc., it is an oath as to the facts stated and it goes to prove absence in a legal way; and, therefore, as a part of the affidavit, is to be weighed by the court in passing upon an application for an order of publication. The argument is made by appellant that if the conversation with the executor took place as stated in the attorney's affidavit, then, even though appellant may have been known to be in Oregon, affiant was not guilty of perjury.    We agree that behind each of the material probative facts there should stand the affidavit of some one who can be subjected to the pains and penalties of perjury if his affidavit is criminally false, but we disagree with the view that perjury might not be committed.    Let us apply the test of a possible charge of perjury.    If affiant willfully and corruptly swore that he received the information stated when in truth he had not, and willfully swore that because of the information personal service could not be had, we think he corruptly stated as an ultimate fact that which he could swear to based upon information received, and that, if he knowingly falsely stated the ultimate fact, he would be criminally liable in perjury.    So when the several parts of the affidavit are considered we should include the ultimate fact which is in itself positively made, that personal service was not to be had because of the antecedent facts; and when we do so regard it, our opinion is that as a whole it contained a sufficient showing for the court to have acted upon.

We pass to the last phase of this branch of the case, namely the nonresidence of the defendant who is appellant here.    The reasoning which has guided us to a belief that the affidavit contained some evidence of absence from the state is appropriate upon the point of nonresidence.    Residence may be testified to upon information or belief. We know that in the daily practice of courts, witnesses swear positively to the nonresidence of people, and that their statements so made rest upon information and belief, yet such testimony is of practical necessity received as fit and sufficient proof.    If the positive statement of nonresidence has been corruptly and falsely made, the witness who has so made it is liable to the pains and penalties of perjury, notwithstanding the fact that it was made on information and belief. In the affidavit under consideration there is the information of the nonresidence of the appellant, given to affiant by the executor.    Affiant swore positively that because of this information personal service could not be made and asked for service by publication.    His conclusion, when expressly based upon facts or information just theretofore stated,

must be considered with such information, and, as the conclusion or ultimate fact was legally inferable, we find that both probative facts and legitimate inferences of nonresidence appeared in the affidavit submitted to the court.

In considering pleadings demurred to for failure to state cause of action, it is often difficult to discriminate between conditions of partial and of total failure. Absolute deficiency must exist, however, in the affidavit examined here to warrant the court in ruling that the judgment of the State Court was a nullity. And we do not find an absolute deficiency. The affidavit is far more complete than that made by the affiant in the case of Neff v. Pennoyer, 3 Sawy. 274, Fed. Cas. No. 10,083; yet upon appeal the Supreme Court (95 U. S. 721, 24 L. Ed. 565), discussing the statute under which the court made its order, said:

"There is some difference of opinion among the members of this court as to the rulings upon these alleged defects. The majority are of opinion that, inasmuch as the statute requires, for an order of publication, that certain facts shall appear by affidavit to the satisfaction of the court or judge, defects in such affidavit can only be taken advantage of on appeal, or by some other direct proceeding, and cannot be urged to impeach the judgment collaterally. * * * If, therefore, we were confined to the rulings of the court below upon the defects in the affidavit mentioned, we should be unable to uphold its decision."

And again, in Marx v. Ebner, 180 U. S. 314, 21 Sup. Ct. 376, 45 L. Ed. 547, the Supreme Court, in considering an affidavit for an order of publication, held that it was proper to consider the return of the officer who was directed to serve the summons together with the other facts proved in the affidavit. The court also there held that there was some presumption that the public officer who received the process did his duty, and made diligent search for the defendant, and that it was not to be expected that positive proof that the defendant could not be found within the state or district would always be attainable. "Facts must appear from which it will be a just and reasonable inference that the defendant could not after due diligence be found, and that due diligence has been exercised, and we think such an inference is reasonable when proof is made that the defendant is a nonresident of the state, and there is an affidavit that personal service cannot be made upon him within its borders and there is a certificate of the marshal such as appears in this case."

Appellant also contends that service upon the minor defendant under 14 years of age in the foreclosure suit could only have been had under section 55 of the Oregon B. & C. Comp., which reads as follows:

"The summons shall be served by delivering a copy thereof, together with a copy of the complaint prepared and certified by the plaintiff, his agent or attorney, or by the county clerk, as follows:
*      *      *      *      *      *      *      *      *      *      *

"(3) If against a minor, under the age of fourteen years, to such minor personally, and also to his father, mother, or guardian, or if there be none within this state, then to any person having the care or control of such minor, or with whom he resides, or in whose service he is employed."

The record shows that the mother of the minor was within Multnomah county, Or., when the summons was placed in the hands of the sheriff, but fails to show that any papers were served upon her as a service upon the minor; nor does it appear that any papers were sent

or delivered to Henry Mauser the adult with whom the minor was living in San Francisco at the time of the foreclosure suit. The Oregon statutes providing for the commencement of actions are divided into two principal sections—one, 55, which provides for personal service, the other, 56, which covers instances where personal service cannot be had. Each statute seems to be complete in defining how and upon whom service shall be had, and one is not to be read into the other. Section 55 enumerates how personal service is to be made upon minors, but we think it is confined to minors within the state, to minors who can be personally served by delivery of copy of the summons and complaint. Section 56 applies in all cases where service of the summons cannot be made, as prescribed by section 55. Section 56 is the only method laid down for service by publication, and its language is comprehensive enough to include defendants, adults, and minors, not within reach of personal service. Indeed unless section 56 provides for service by publication upon minors, then they cannot be served except by personal service. But as there are no words of exclusion or exception in section 56, we believe the accurate view is that minors can be served by publication, as by that section is provided. Again, section 57 of the Oregon Code directs that a copy of the summons and complaint be mailed to the nonresident defendant when his place of residence is known. This applies to all defendants within the purview of the statute, adults, and minors, who are nonresidents.

Appellant urges that the reason for the law requiring personal service of a copy of the complaint and summons applies as well to minors without the state as to minors within the state, and that the underlying purpose of the statute is to require notification by delivery to an adult most likely to guard the interests of the minor. This argument is not without force, but it cannot prevail as against the written law which puts the nonresident minor on the same footing with the nonresident adult. Nor is it unreasonable to believe that in enacting this legislation it was thought by the Legislature that mail for a nonresident minor, particularly if of tender years, would in all probability be received by an adult having the care of the person of the minor, and who would promptly inquire into the matter. But, however that may be, we are unable to conclude that it was necessary to mail a copy of the complaint and summons to the person with whom the minor resided in San Francisco.

Finding no error in the action of the Circuit Court, the decree is affirmed..