## FISHER et al. v. JORDAN et al.
### (two cases).
### Nos. 63, 64.

District Court, N. D. Texas, Lubbock Division.

Feb. 12, 1940.

609

Stubbeman, McRae & Sealy, of Midland, Tex., for plaintiffs.

Lawrence Barber, of Seagraves, Tex., and Vickers & Campbell, of Lubbock, Tex., for defendants.

DAVIDSON, District Judge.

These two suits are between the same parties. They involve adjoining tracts of land, with similar controversies concerning the title thereto.

In case No. 63, the defendant H. C. Jordan was admittedly the former owner of 120 acres of land out of the northeast corner of section 800 in Yoakum County, which was awarded to him August 19, 1908, while he was a married man.

Subsequent to this award, there was filed in the County Court of Scurry County, Texas, a certain suit styled W. E. Head v. H. C. Jordan. Jordan and his wife had separated and he had left the country. The plaintiff undertook to cite him by publication and to subject the 120 acres of land to the jurisdiction of the court by levying an attachment thereon under the statutes providing for citation by publication. To secure the issuance of said citation, the plaintiff filed an affidavit signed by his

attorney, containing the following recitation: "That he has made diligent inquiry concerning the whereabouts of the defendant, H. C. Jordan, in the cause of W. E. Head v. H. C. Jordan No. 513, in the County Court of Scurry County, Texas, and that the whereabouts of said defendant by the use of reasonable diligence cannot be ascertained; that said affiant is one of the attorneys for the plaintiff in said cause, and asks for citation by publication."

Citation was issued under this affidavit, judgment entered against the defendant Jordan, and the land sold under execution. The plaintiffs in this case assert title through this execution sale. The defendant Jordan asserts that the judgment entered was void, and the subsequent sale without effect; that it was community property, and that he still owns a one-half undivided interest.

The statutes of Texas regulating citation by publication in order to confer jurisdiction upon the court, in the pertinent parts read as follows: Art. 2039: "Where a party * * * shall make oath * * * that any party defendant therein is a non-resident of the state, or that he is absent from the state, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant * * *."

The affidavit, it will be observed, is to the effect that the "whereabouts" of the defendant is unknown. It has been observed in certain cases that "whereabouts" and "residence" are not the same term. We may ascertain one's residence and still not know his whereabouts.

The plaintiff insists that inasmuch as citation did issue by publication, and inasmuch as a judgment was entered, regular upon its face, that the same cannot be now collaterally attacked; that the judgment speaks for itself and its verity cannot be questioned.

One of the most widely quoted cases is that of Pennoyer v. Neff, 95 U.S. 714, 722, 24 L.Ed. 565. In that case Neff was the owner of a tract of land in the State of Oregon. He was sued and cited by publication, judgment taken, and the land ordered sold, the same being bought in by Pennoyer. There was later a suit between him and Neff. Neff's counsel urged that the judgment was in personam and had been secured without personal service; that the judgment was not in rem, in that the property had not been subjected to the jurisdiction of the court, and since the court had no jurisdiction of the person, nor jurisdiction of the property, it could not render a valid judgment.

The Oregon statute authorized citation by publication, and that proof of the publication might be made by the printer, his foreman or principal clerk. The proof in this case was made by the "editor." This litigation took place at a time when the distinction between a publisher of a paper, or a printer of the paper, and the editor of the paper had not been fully developed. The terms "editor" and "printer" were frequently used interchangeably, and the court decided that the editor's affidavit would be sufficient. The court's reasoning, however, on the question of jurisdiction, is interesting, and throws light upon the controversy in all similar cases:

"The several States of the Union are not, it is true, in every respect independent, many of the rights and powers which originally belonged to them being now vested in the government created by the Constitution. But, except as restrained and limited by that instrument, they [the states] possess and exercise the authority of independent States, and the principles of public law to which we have referred are applicable to them. One of these principles is, that every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. As a consequence, every State has the power to determine for itself the civil status and capacities of its inhabitants; * * * and also to regulate the manner and conditions upon which property situated within such territory, both personal and real, may be acquired, enjoyed and transferred. * * *

"The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity * * *. 'Any exertion of authority of this sort beyond this limit,' says Story, 'is a mere nullity, and incapable of binding such persons or property.' * *

"'Jurisdiction is acquired in one of two modes: first, as against the person of the defendant by the service of process; or, secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case, the

defendant is not personally bound by the judgment beyond the property in question. * * * It must be substantially a proceeding in rem.' * * *

"If the judgment be previously void, it will not become valid by the subsequent discovery of property of the defendant, or by his subsequent acquisition of it. The judgment, if void when rendered, will always remain void; it cannot occupy the doubtful position of being valid if property be found, and void if there be none. * * the validity of every judgment depends upon the jurisdiction of the court before [the judgment] is rendered, not upon what may occur subsequently."

The plaintiff in the Pennoyer case having failed to levy upon the property and bring it under the jurisdiction of the court, was holding under a void judgment.

The case of Arndt v. Griggs, 134 U.S. 316, 10 S.Ct. 557, 559, 33 L.Ed. 918, discusses the question of jurisdiction in this relation in line with Pennoyer v. Neff, supra, and goes into certain, specific details. In that case the court states the proposition in this manner:

"Or, in other words, we think the question is this: Has the state any power, through the legislature and the courts, or by any other means or instrumentalities, to dispose of or control property in the state belonging to non-resident owners * * * where such non-resident owners will not voluntarily surrender jurisdiction of their persons to the state, or to the courts of the state, and where the most urgent public policy and justice require that the state and its courts shall assume jurisdiction over such property? * * * We think a sovereign state has the power to do just such a thing. * * *

"These various decisions of this court establish that, in its judgment, a state has power by statute to provide for the adjudication of titles to real estate within its limits as against non-residents who are brought into court only by publication * * *."

These decisions, together with the case of Hart v. Sansom, 110 U.S. 151, 3 S. Ct. 586, 28 L.Ed. 101, which was a Texas case, establish the law that title to land may be adjudicated and the land itself brought under the jurisdiction of the court under statutes specifically providing for such action. The question now follows: How exactly must the litigant follow these statutes in order to confer jurisdiction upon the court?

Turning a moment to the decisions of Texas courts, we find in Treadway v. Eastburn, 57 Tex. 209, the following pronouncement: "If the uncontradicted recitals in the record show affirmatively that the court did not have jurisdiction over the subject matter, or that the jurisdiction over the person did not attach, then a presumption to the contrary will not be indulged. * * * To determine, however, whether the record shows affirmatively that there has been proper service, the whole of it should be taken together."

In Stegall v. Huff, 54 Tex. 193, 194, a judgment was procured against Huff in the Justice Court. The judgment followed a citation by publication. The affidavit for publication of the citation in the Justice Court case recited that the residence of said Huff was unknown to the affiant. At that time this affidavit did not come within the statute. The land having been sold, Stegall, the purchaser, later entered into a suit in the District Court, one of general jurisdiction, for title. Judge Bonner, in passing upon the question, says:

"The affidavit for citation by publication in the justice court, in the case of Stark v. Huff, was based upon the ground that the residence of the defendant was unknown. Under the law then in force, citation by publication was authorized in justice courts only upon affidavit that the defendant was absent from the state, or that he was a transient person. * * *

"It is a well established general rule, that if it affirmatively appears from the record, either that the court did not have jurisdiction of the subject-matter or of the person by some mode of procedure authorized by law, * * * then the judgment will be held void, even upon a collateral attack. Freeman on Judgments, ch. 8.

"In this case the record of the justice court affirmatively shows that the judgment by default against Huff was rendered upon citation by publication, issued upon a ground not authorized by the statute, and was consequently void, and not voidable only."

We have a comparatively recent decision by Chief Justice Cureton in the case of Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 637, 66 A.L.R. 916, in which were reviewed certain orders of the Probate Court

affecting the homestead which had been put up for sale under the orders of such Court. The purchaser insisted that the sale had been approved by the court, and the conveyance executed, and that the transaction had become a judgment of a court of competent jurisdiction, not subject to impeachment except in a direct proceeding. Justice Cureton quoted with approval the case of Hall v. Fields, 81 Tex. 553, 17 S.W. 82: "The Supreme Court reversed and rendered this case in favor of the guardian and the children, although it was plainly a collateral attack on the probate proceedings under which Fields had become the purchaser of the property."

Texas Jurisprudence, vol. 25, sec. 256, says: "There is a marked difference between a void judgment and one only voidable. The latter may be defined as a judgment of a court of competent jurisdiction which appears to be valid, but which is, in fact, erroneous or irregular by reason of some defect that does not affirmatively appear upon its face or in its record. * * * (It) may be annulled on direct attack launched within the time and in accordance with the methods provided by law. It is binding and conclusive in all respects until it is actually vacated or set aside."

Sec. 254: "A void judgment * * * is an absolute nullity, and all acts performed under it are also nullities. It has been said to be in law no judgment at all, * * * and neither lapse of time nor judicial action can impart validity."

█ There is, of course, a well-recognized rule which forbids the receipt of extrinsic evidence to vary, impeach, or contradict a solemn judgment of the court. Texas Jurisprudence, vol. 25, sec. 260, states:

"While there can be no doubt as to general acceptation of the rules stated, * * * there are situations in which their application is greatly relaxed, if not denied altogether. These situations arise where the court has rendered a judgment in a matter over which it could have had no possible jurisdiction. * * * In such cases the assailant is permitted to prove by evidence aliunde the record, the fundamental fact upon which his contention rests, even though no trace of the defect claimed is apparent in either the judgment or its record. * * *

"Thus a judgment rendered against one who died before the suit was filed, or the grant of an administration upon the estate of a living person, or a judgment escheating his property to the state, is a mere nullity. * * * So orders authorizing and confirming the sale of a homestead for the purpose of paying general creditors of an estate are void and subject to collateral attack even though the nullity does not appear upon the face of the record."

Sec. 269: (Necessity for Process)—"He must be served in one of the ways authorized by the statute. * * * In order to obtain jurisdiction over the defendant, and thereby authorize the rendition of such a judgment against him, the statutory procedure for issuance and service of process must be strictly followed."

Section 303, treating of defective process, says that statutes authorizing substituted service or constructive service are in derogation of the common law and plaintiff must follow the statutes closely. "If this is done, the judgment will be invulnerable to collateral attack as any other adjudication; but if it is not done, the judgment is a mere nullity."

This subject is treated in 34 Corpus Juris, p. 1160, § 1642, as follows: "Although some of the earlier decisions in the inferior courts of the United States were disposed to hold that they should not allow any contradiction of the record of a state judgment in respect to jurisdictional recitals, this position has been abandoned and it is now held that the want of jurisdiction may be shown, notwithstanding the recitals of the record."

In the case of Galpin v. Page, 18 Wall. 350, 358, 85 U.S. 350, 21 L.Ed. 959, we find the following excerpt from the case of Dozier v. Richardson, 25 Ga. 90, by the Supreme Court of Georgia: "It is no doubt true, that a judgment rendered against a man, by a court that has jurisdiction to render it, is conclusive against him if not obtained by fraud. But does a court have jurisdiction to render judgment against a man who has never had notice of the suit, and who does not appear to the suit? Most certainly not. Can it get this jurisdiction by falsely reciting, in some proceeding in the suit, that the man was notified of the suit, or that he appeared to it? Nobody will say so. But we have to say so in effect, if we say that such recitals are con-

clusive on the man. *This must be manifest.* It follows, then, that we cannot say so."

In the Galpin case a posthumous child seems to have appeared after the filing of litigation. She was made a party and a guardian ad litem appointed for her, but she was never served with any form of process. Judge Field said in this case that the District Court never acquired jurisdiction over the person of Franklina Gray and therefore had no more authority to appoint a guardian ad litem for her in the action than it had to appoint attorneys for the other defendants.

"Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact." Galpin v. Page, supra.

The case of Cooper v. Newell, 173 U.S. 555, 19 S.Ct. 506, 510, 43 L.Ed. 808, is a case that went up from Texas and one with an unusual background. In that case Newell owned property in Brazoria County, and had resided in Galveston, but had removed to the State of Pennsylvania. In 1850 one McGrael, a resident of Brazoria County, sued Newell, alleging that he was a resident of Brazoria County, Texas. There was no process, but at the time of trial counsel appeared for the defendant in the person of J. A. Swett, who filed a pleading and conducted a trial. Newell lost, and his land was sold. In about 1890, some 40 years later, Newell, having discovered the judgment against him, claimed the property. Opinion was rendered by Chief Justice Fuller, in which we find:

"In Thompson v. Whitman, 18 Wall. 457 [21 L.Ed. 897], a leading case in this court, it was ruled that 'neither the constitutional provision that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered'; that 'the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and, if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist'; and that 'want of jurisdiction may be shown, either as to the subject-matter or the person, or, in proceedings in rem, as to the thing.'

"But, while these propositions are conceded, it is insisted that the circuit court of the United States for the Eastern district of Texas was bound to treat this judgment, rendered by one of the courts of the state of Texas, as if it were strictly a domestic judgment drawn in question in one of those courts, and to hold that it therefore could not be assailed collaterally."

In concluding the opinion, Justice Fuller said: "We think the circuit court was clearly right in admitting evidence to contradict the recital that Newell was a citizen and resident of Texas, and to show that the attorney had no authority to represent him."

█ Considering these and other decisions bearing upon constructive service and jurisdiction of the courts acquired thereby, we think a true statement of the rule would be: When a court has adjudicated a question, the controversy is closed between the parties and the verity of the judgment rendered may not thereafter be questioned or collaterally attacked, but whether the court that rendered the judgment had jurisdiction over the parties or over the subject-matter is one open to inquiry.

█ In the case now before us, a necessary link to plaintiff's title is the sale under the execution issued upon the judgment in the County Court of Scurry County. This judgment was procured upon a citation by publication issued upon an affidavit not authorized by law nor meeting the requirements of the statute. These statutes conferring jurisdiction upon nonresidents must be literally followed or else the court acquires no jurisdiction. The affidavit was a part of the record in the case, so required by statute. If there had been no affidavit, but the judgment had recited one, a presumption would have been indulged that a correct affidavit had been filed. But the affidavit is here and is a part of the record, which must be treated as a whole in determining the court's jurisdiction under the statute.

█ "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he

has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard." Galpin v. Page, supra.

In view of what has been said, judgment will be entered in favor of the defendant for an undivided one-half interest in the land.

■ It is urged that Fisher was an innocent purchaser for value, that the record shows the consideration was a pre-existing debt. Insomuch, however, as the defendant apparently does not desire to controvert it and that it is just that Fisher should have his debt, we think that the judgment in favor of the defendant should be charged with a lien for one-half of the purchase price paid for said property.

### No. 64.

No. 63 and No. 64 were consolidated and tried together. As 63 turns upon the construction of the sale under one judgment, so does the land in No. 64 turn upon a construction of two judgments.

The defendant Jordan was a married man at the time the land was awarded to him from the public domain of the State of Texas, and the same was community property. He and his wife separated and after his departure from the country she procured a divorce, and in that decree she took title to the land, along with the divorce. Some ten years later she brought suit in trespass to try title and sued the defendant Jordan, and cited him by publication, and again took judgment for the land, and later sold it.

It is insisted that the court in the divorce judgment was without power to divest the defendant of his one-half interest in the property. Article 4638, Revised Statutes of Texas, 1925, and in effect at the time of that decree, is as follows: "The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

■ It has been long recognized as the law under this statute that while the court may set aside the use and revenues of property for the benefit of the wife or husband, that the court is without power to divest either party of his or her title to real estate.

■ The 200 acres in question was the homestead of the wife, Ethel Jordan, who had her name changed back to Ethel Hall. The decree awarding her title to this land was in derogation of the statute, void and without effect. A certified copy of it, however, was recorded in volume 12, page 203 of the Deed Records of Yoakum County, where the land was situated. Thereafter, in 1928, Mrs. Ethel Hall, the divorced wife of H. C. Jordan, brought suit against him in Yoakum County, in which she alleged that she was a resident of Taylor County, Texas, and that the residence of the defendant was unknown. In the first count of her petition she made the usual allegation of trespass to try title. In the second count of the same petition she specially plead her title as is required by the statute in these cases, and claimed the land under statute of ten years' limitation, and that she had used the same under a written memorandum of title which fixed the boundaries of her claim, and which had been duly registered in Book 12, page 203 of the Deed Records of Yoakum County, Texas. This document in Volume 12, page 203 of the Deed Records of Yoakum County, was the certified copy of her divorce decree in which she had been awarded title to the land. This decree being in derogation of the statute, and null and void, left her and the defendant, H. C. Jordan, as cotenants, each owning a one-half undivided interest in the property. If we assume that the decree was valid to the extent of conferring the possession and use of the property upon her for her life, or any fixed period, then she became a life tenant, or a tenant for a term, and the husband became the remainderman for the one-half of the land. Limitation will not run against a remainderman in favor of the life tenant; neither will it run in favor of a cotenant until the cotenant has been put on notice of any adverse claim.

■ Article 1977, Revised Statutes of Texas, Vernon's Ann.Civ.St. art. 1977, under the heading of Suits against Non-Residents, provides that the pleading in such cases shall name the parties, describe the property, set forth the claims of the plaintiff and in effect specially plead his title in greater detail than is required by the ordinary form of trespass to try title.

The purpose of the statute is manifest, and the present case is an example of that purpose. The law goes further and requires the plaintiff, at the conclusion of the trial, to file a statement of facts showing what evidence was offered. The pleading in this case sets forth a claim under the statute of limitations. It claims under an instrument which is a nullity and which bars the plaintiff from establishing title by limitation. No statement of facts was filed in the case, which leads one to infer that there were no facts that would establish title by limitation, and, moreover, if there were facts at that time that would vest title by the statute of limitation, those facts might have been offered in support of title on the present trial. Since they were not offered, the inference may go further, that there was never any actual possession of the property that would support limitation. The proof must conform to the pleading, and if there were proof that conformed to the pleading, based upon the title attempted to be settled in the divorce decree, then there could have been no judgment upon the pleading that would support the statute of limitation. In other words, the nature of her claim under the divorce decree could not mature a limitation title.

It is insisted that since the defendant Ross Walker, holding under H. C. Jordan, had bought some interest in this land from those holding adversely to Jordan, that he has recognized the validity of this adverse title and is bound thereby. We think that a claimant of real property may buy up adverse claims or claims adverse to his without admitting that the claim so purchased is superior to the real title held by himself or some other person. The law recognizes the right of the holder of real property to perfect his title by buying out adverse claimants, and, too, this is in line with a compromise in any controverted issue. A litigant may buy his peace without thereby conceding that he was in the wrong. Matthews v. Houston Oil Co., Tex.Civ. App., 299 S.W. 450, 454; Chapman v. Dickerson, Tex.Civ.App., 223 S.W. 318, 320.

As to the contention of innocent purchaser, the Court makes the same finding and direction that he did in Civil Action No. 63, disposed of hereinabove. It is, therefore, ordered that judgment be entered for the defendant Jordan as herein indicated and directed for one-half of the property in question.