### RED WARRIOR COAL & MINING CO. v. BORON.

No. 6307.

United States District Court W. D. Pennsylvania.

July 16, 1951.

Margiotti & Casey and Harry Savage, Pittsburgh, Pa., for plaintiff.

Pugliese, Troiano & Pugliese, Pittsburgh, Pa., for defendant.

JAMES ALGER FEE, District Judge.

This is a motion to vacate or alter a judgment so that it shall be "without prejudice." The motion is verified by counsel for plaintiff, but there is no statement as to what provision of statute or Federal Rules of Civil Procedure movant relies upon for vacation. There is no statement of facts showing surprise or excusable neglect under Rule 60(b), 28 U.S.C. There is no statement that plaintiff in good faith expected to adduce evidence to establish the allegations of its complaint, which has always been a prerequisite to relief of this kind.

This cause was duly and regularly set for trial according to the rules then in force, which had been promulgated with the concurrence of all of the judges of the District. When the case was reached for trial, a jury was impaneled and counsel for plaintiff was directed to proceed. Counsel failed to make an opening statement or adduce any evidence. Thereupon, counsel for defendant moved to dismiss the action with prejudice. No evidence or affidavit was offered to the effect that plaintiff had a valid or any claim against defendant or that there was any evidence which could be adduced to support a claim or that the plaintiff was in good faith. There was no evidence or affidavit that the witness whom counsel contended was expected was en route to or ever arrived in Pittsburgh. Even in the present motion, there is no such showing. The Court granted the motion of defendant. Thereupon, defendant failed to introduce evidence on a counterclaim. Coun-

sel for plaintiff moved to dismiss the counterclaim with prejudice. The Court granted this motion also. The Court entered findings of fact[1] in regard to the

### I. Findings of Fact

"1. This case was instituted by the plaintiff by filing its Complaint in this Court on March 4, 1947. After responsive pleadings were filed and the case was at issue plaintiff, as appears from the Docket, filed praecipes to place same on the Jury Trial List for trial on four different occasions, to wit, on August 18, 1947, on April 12, 1948, on September 8, 1948 and on December 7, 1948. Pursuant to these praecipes, this case was placed on the trial list for trial.

"2. It is provided in Rule VIII, Sec. 3(a), as follows:

"Section 3. (a) The list of Civil Cases ready for Jury Trial will be called by the Court on the second Friday preceding the time set for trial of Civil Cases at 2:00 o'clock P.M.

"This Call of the List took place on Friday, September 29, 1950, at 2:00 P.M.

"3. On Wednesday, September 27, 1950, a notice to the Bar was published in the Pittsburgh Legal Journal, which reads as follows:

"'3. In order to enable the Court properly to prepare a day by day calendar, a preliminary call of the entire list will be had at a time to be notified as above provided. The Court will understand that cases not then answered to are ready for trial upon any day that may be designated.

"'Application for continuance, and all other applications affecting the list, of which at least twenty-four hours' notice must be given to opposing counsel, must be made upon this call and not afterwards, except for reasons thereafter arising.'

"4. It is provided in Rule VIII, Sec. 3(c), of this Court, as follows:

"Section 3. (c) An application to keep a case off a daily list must be for cause and shall be made before the daily list is prepared. After a case has been placed on the daily trial list, it shall not be removed therefrom without further order of Court.

"5. Prior to September 29, 1950, a preliminary list of all cases for jury trial was mailed to all counsel of record and at the preliminary call of the above entitled case on Friday, September 29, 1950, at 2:00 o'clock p.m., counsel for both sides were present. At that time the presiding Judge called attention to the Rules of Court and stated that when cases were placed on the daily list for trial all parties should be prepared to go to trial. On the same day and at the same time the above entitled case being No. 37 on the list, same was called and no application for postponement or continuance was made by either party, both sides indicating readiness for trial. A true and correct transcript by the official reporter of that portion of the Call of the List on Friday, September 29, 1950, having reference to the above entitled case is herewith filed and made part of this Record.

"6. Following the Preliminary Call of the List the above entitled case was placed on the Final Trial List and became Case No. 27 listed for trial.

"7. The above entitled case was placed on the Daily Trial List for Tuesday, October 10, 1950, no application for delay, postponement or continuance having been made before said case was placed on the Daily List.

"8. On October 10, 1950, said case being on the Daily Trial List, counsel for plaintiff appeared in Open Court and applied for a continuance of the case to October 16, 1950. This application was refused by the Court. A true and correct transcript of the proceedings had at this time, when the case was called, is filed herewith in this case and made part of this Record.

"9. This case appeared on the Daily Trial List for October 11, 1950 and on the Daily Trial List for October 12, 1950. On October 12, 1950 at 12:45 P.M., plaintiff again applied for a postponement of the trial in Open Court but same was refused and the parties ordered to select a jury. A true and correct transcript of the proceedings of this hearing is filed herewith and made part of this Record.

"10. The first application made by plaintiff for a postponement was on Tuesday, October 10, 1950 which was after the case had appeared on the Daily Trial List which was published on Monday afternoon, October 9, 1950, in the Pittsburgh Legal Journal and at least ten (10) days after the parties had declared themselves ready for trial. The only reason given to the Court on Tuesday, October 10, 1950, for a postponement was that a Mr. Kumpf, president of plaintiff, a corporation, who was one of the witnesses in the case, was in Los Angeles, California where he had commitments, the nature of which were unexplained. In refusing plaintiff's Motion, the Court pointed out that it only takes twelve hours to travel by plane from Los Angeles to Pittsburgh.

situation as a basis for judgment of dismissal of complaint and counterclaim.

The plaintiff has no ground of grievance, whatever the circumstances. By obtaining a dismissal of the counterclaim with prejudice, plaintiff waived any error in the dismissal of the complaint with prejudice.

It is claimed the action of the Presiding Judge and of the Trial Judge was arbitrary and capricious. See Fisher v. Jordan, D.C., 32 F.Supp. 608, 609. But the action was not dismissed by the Court of its own motion, as it might have been. Shotkin v. Westinghouse Electric & Manufacturing Co., 10 Cir., 169 F.2d 825. It was dismissed on motion of defendant, in strict accordance with the language of Rule 41(b), Federal Rules of Civil Procedure. Plaintiff attempted to dismiss

without prejudice, but over objection that was not proper. Rule 41(a) (2), Federal Rules of Civil Procedure.

The multitudinous ramifications of the doctrines of essoins bulk large on the crabbed texts of the black-letter abridgments and yearbooks of medieval common law. The delays of the solicitors were then notorious and brought administration into disrepute. For more than a century, attempts have been made to speed consideration of causes.

If the matters urged by counsel were valid reasons for failure to try the case upon call, fifty other counsel whose cases were set on the same calendar could likewise jockey for position. Meantime all the litigants would suffer.

The motion to vacate or modify is denied.

"11. At the hearing on October 12, 1950, in again applying to the Court for a postponement, counsel for plaintiff advanced the same reason as before. Counsel for plaintiff stated that he had spoken to the witness in question by telephone the night before (Wednesday, October 11, 1950) at 10:30 p.m. The witness was not then ordered or instructed to come to Pittsburgh. It further appears from the record that the witness knew the case had been listed for trial on the General List before he went to California.

"12. In refusing plaintiff's Motion for postponement on October 12, 1950 the Court made the following statement to plaintiff's counsel:

" 'I told counsel when I called the list two weeks ago that counsel should make ready to go ahead with the case whenever it is placed on the Daily List. Whenever we were ready to select a jury, that case would be called. You make no application to the Court to keep this case off the Daily List.'

"13. On the afternoon of October 12, 1950, counsel for both sides having been instructed to select a jury for trial, did so, and the case was duly assigned to this Court for trial that same afternoon. The jury was sworn. Defendant was ready for trial; plaintiff was not. Plaintiff again sought delay due to the absence of the witness Mr. Kumpf who was still in California, and who was instructed for the first time to come to Pittsburgh the

afternoon the jury was selected (in the Transcript of these proceedings counsel for plaintiff refers to Mr. Kumpf as the 'plaintiff' but the plaintiff is a corporation. Mr. Kumpf was only a witness.) The Court ordered plaintiff to proceed with the trial the next morning at 10:00 o'clock A.M.

"14. On the morning of October 13, 1950 at 10.00 a. m., the defendant being ready for trial and the jury having been sworn to try the case, the plaintiff was ordered to proceed with the trial. Plaintiff's counsel read into the Record a telegram stating that the witness Kumpf would arrive in Pittsburgh that morning at 9:55 a. m. Plaintiff's counsel refused to open the case to the Jury and to call witnesses other than Mr. Kumpf who were available or to comply with the Court's order in any other manner, whereupon the Court being of the opinion that plaintiff's failure and refusal to proceed was inexcusable, granted defendants Motion to dismiss with prejudice. A true and correct copy of the transcript of the proceedings before this Court on October 12, 1950 and on October 13, 1950 is filed herewith and made part of this Record.

"15. After plaintiff's claim was dismissed, defendant did not proceed with his Counterclaim and plaintiff moved to dismiss defendant's Counterclaim with prejudice, which Motion was granted."